AE

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| UNITED STATES OF AMERICA | ) | |
|---|---|---|
| | ) | |
| v. | ) | No: 05 CR 200 |
| | ) | |
| JESSIE LLOYD | ) | Judge John W. Darrah |
| | ) | |

## MEMORANDUM OPINION AND ORDER

The United States of America ("the Government") brought a one-count indictment against Defendant, Jessie Lloyd. The Defendant, a convicted felon, was indicted for possessing a firearm that traveled through interstate commerce in violation of 18 U.S.C. § 922(g)(1). Presently before the Court is Defendant's Motion to Suppress Evidence. Specifically, the Defendant seeks to suppress the firearm allegedly found in his possession on September 6, 2004, and statements made by the Defendant after his arrest on that same day. The parties submitted briefs; and an evidentiary hearing on the motion was held, during which James Triantafillo, Daniel O'Brien, and Joseph Wagner (all Chicago police officers), and Shaneka Durdin testified. For the reasons that follow, the Defendant's Motion to Suppress is denied.

## BACKGROUND

The police officers testified as follows. On the evening of September 6, 2004, Chicago Police Officers James Triantafillo, Daniel O'Brien, and Joseph Wagner were on patrol in plain clothes in an unmarked green Ford Crown Victoria, which Officer Triantafillo was driving. At 11:31 p.m. on September 6th, the officers received a radio transmission of a large number of people arguing and a man with a gun at the intersection of Kildare and West End in Chicago,

1

Illinois. The dispatcher did not give a description of the man with a gun. The officers approached the area, they observed approximately thirty to forty people on the corner at the intersection of West End and Kildare. West End is an east-west street; Kildare runs north and south.

Officers Wagner and O'Brien got out of the car. Officer O'Brien was wearing a black armor vest and his police badge. All three officers were armed. When the officers first saw the Defendant, he was west of Kildare, on the north sidewalk of West End, approximately fifteen to twenty feet from the officers. The Defendant looked in the officers' direction and began to run westbound on the north sidewalk of West End, holding his right side with his right hand as he ran. The other people who began leaving the corner of West End and Kildare were not running; everyone, except the Defendant, walked away.

Three officers gave chase – Officers O'Brien and Wagner on foot, and Officer Triantafillo in the police car. Officer O'Brien yelled, "Police! Stop!"; but the Defendant continued to run. Officer Triantafillo drove the police car west on West End ahead of the running Defendant and turned north a few yards into an alley, stopped and blocked Defendant's path as he ran on the sidewalk. Once the Defendant was blocked from proceeding west on the sidewalk, the Defendant turned and ran south.

As the officers approached the Defendant, they ordered him to drop the gun; the Defendant pulled a gun from his waistband with his right hand and dropped it at the curb on the north side of West End near the alley. At this point, the Defendant was approximately eight to nine feet from the officers. The gun bounced on the curb and fell into the street. After dropping the firearm and on the order of the officers, the Defendant had lain down on the grass with his

head facing north towards the sidewalk. Officer O'Brien recovered the firearm approximately two to three feet from where the Defendant was lying. The Defendant was arrested and charged with possession of a firearm (later amended to possession of a firearm by a felon).

The Defendant was read his Miranda rights at the scene and later at the police station. At the station, the Defendant told the interviewing officers: "[T]hem boys were f---king with my brother" and "I had to protect my little brother." When asked where he obtained the gun, the Defendant said, "I just walked up and dude [sic] gave it to me."

Shaneka Durdin, a friend of the Defendant, testified that she and the Defendant were on her front porch at 4244 W. West End (east of Kildare) when an argument broke out down the street and that she and the Defendant went down to the corner to see the argument. Ms. Durdin testified that there were thirty to forty people at the corner. Ms. Durdin testified that the Defendant was not involved in the argument and that no one approached the Defendant and gave him a gun. Further, she testified that at no time did she see the Defendant with a gun while she was with him on September 6, 2004.

Ms. Durdin testified that when the police car arrived at West End and Kildare, everybody scattered in different directions and that everybody ran; that the Defendant ran west, and that the Defendant was not holding his side or waist. Ms. Durdin testified that she ran east, back toward her house. Ms. Durdin stopped three houses east of the intersection of Kildare and West End, and she saw the Defendant slip and fall on the grass west of Kildare before the alley. She stated that she never saw the Defendant drop a firearm.

## ANALYSIS

The gravamen of the Defendant's motion to suppress is that the arrest effectuated by the officers was in violation of the Fourth Amendment protection against illegal searches and seizures because the officers lacked probable cause to believe that the Defendant possessed a firearm. Citing *Wong Sun v. United States*, 371 U.S. 484, 486 (1963), the Defendant further argues that the Defendant's post-arrest statements should be suppressed because the statements were obtained after, and therefore were "the fruits" of, an allegedly illegal arrest.

The Government must prove the factual allegations supporting the arrest and the statements made by the Defendant by a preponderance of the evidence. *See United States v. Matlock,* 415 U.S. 164, 177-78 n.14 (1974). "A law enforcement officer has probable cause to make an arrest when the facts and circumstances within the officer's knowledge and of which the officer has reasonably trustworthy information are sufficient to warrant a prudent person in believing the suspect has committed or is committing an offense." *United States v. Sawyer*, 224 F.3d 675, 678-79 (7th Cir. 2000) (*Sawyer*). Probable cause does not require evidence to convict a suspect, or even evidence showing it was more likely than not that the suspect committed the crime. Instead, if the totality of the circumstances, "viewed in a commonsense manner," indicate a probability of criminal activity by the suspect, probable cause exists. *Sawyer*, 224 F.3d at 679.

Here, based on the totality of the circumstances, the officers had probable cause to arrest the Defendant. The officers received information of the location of a disturbance and that someone there had a gun; when they arrived, they observed the Defendant run away, holding his right side as he ran. As the officers chased and drew near the Defendant, the Defendant reached

4

into the waistband of his pants, pulled out a gun, and dropped the gun on the ground; and the Defendant was then arrested. The officers' testimony in this regard was consistent and credible. Ms. Durdin, who testified for the Defendant, said that she did not see the Defendant with a gun that evening. She also testified she did not see the Defendant drop a gun before he was arrested. However, Ms. Durdin was a significant distance from the Defendant and the officers at the time of the arrest. At the time that the officers testified that the Defendant dropped the firearm, Ms. Durdin was at least half a block away from the Defendant and the officers. The officers were about ten to twenty feet from the Defendant then, and the weapon was recovered a few feet from where the Defendant was arrested. Thus, based on a totality of the circumstances, the officers had probable cause to arrest the Defendant; and, further, the post-arrest statements made by the Defendant were not illegally obtained.

## CONCLUSION

For the foregoing reasons, Defendant's Motion to Suppress is denied.

Dated: April 26, 2006

JOHN W. DARRAH
United States District Court Judge